UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JAMES SCOTT #124522,
        Plaintiff,              Civil Action No: 14-12123
                                        Honorable Thomas L. Ludington
v.                                         Magistrate Judge Elizabeth A. Stafford

ROCKY BURRIS, *et al.*,
        Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [R. 16, R. 47] AND TO *SUA SPONTE* DISMISS DEFENDANT RAYMOND BOOKER FROM THIS ACTION

**I.    INTRODUCTION**

In his verified First Amended Complaint, Plaintiff James Scott, a Michigan Department of Corrections ("MDOC") prisoner proceeding *pro se*, alleges that he was fired from his prison job in retaliation for exercising his First Amendment rights, was denied meaningful access to the courts, and was denied due process when fired from his prison job. [R. 19]. Defendants Cheryl Groves, Gayle Leach and Randall Haas filed a motion for summary judgment, and Defendants Ken Ryan and Corby DeForest filed a separate motion for summary judgment after they were later added to the case. [R. 16; R. 47]. For the following reasons, the Court finds that Scott has failed to present evidence sufficient to show a genuine dispute of

fact, and **RECOMMENDS** that the motions for summary judgment be **GRANTED**.  Additionally, the Court **RECOMMENDS** that the claims against defendant Raymond Booker[1] be **DISMISSED** *SUA SPONTE* pursuant to 28 U.S.C. §1915(e)(2).

## II.   BACKGROUND

According to Scott, while housed at the Ryan Correctional Facility (RRF), he was approached by librarian Gayle Leach with an offer to take legal writer's training.  Scott refused the offer, but was transferred to E.C. Brooks Correctional Facility (LRF) to take the training anyway. [R. 19, PgID 149].  While at LRF, Scott complained to Administrative Assistant Cheryl Groves that he did not sign up for the legal writer's training and wanted to be returned to RRF. [*Id.*].  Groves told Scott that she would look into it but, after he completed the training, she told him that he might not be transferred back to RRF. Scott then threatened to file a 42 U.S.C. §1983 complaint against her if he were not returned.  Groves replied that she would send him to RRF, but he would not be working as a legal writer. [*Id.*, PgID 149-50].

Scott was transferred back to RRF.  Upon his return, he questioned Leach about why she had sent him to the legal writer's program against his

---

[1] Having only recently been served with the complaint, Booker is not a listed on either motion for summary judgment.

2

will.  Nonetheless, he verified to Leach that he completed the program, and he was assigned as a legal writer at RRF.  [*Id.* at 150].  Shortly thereafter, Scott complained to Leach that the computer keyboards were too small, and Leach responded that the contractor for the legal writer program planned to send larger ones. [*Id.* at 150-51].

Scott told Leach that the contractor, attorney Eric Matwrejezyk, was helping him with a lawsuit that Scott had filed in federal court. [*Id.*; R. 24, PgID 205, 234-36].  Scott states that, although Leach encouraged his contact with Matwrejezyk, she told him the next day that Groves requested that he be fired for having people he knew contact the contractor. [R. 19, PgID 151].  Scott filed a grievance alleging that Groves had him terminated in retaliation for his threat to sue her and after being informed that an attorney was assisting him with his lawsuit.  Raymond D. Booker, the warden of RRF, responded to the grievance by stating that Scott was terminated for inappropriate behavior.  [*Id.,* PgID 151-52].

Shortly thereafter, Scott was transferred to the G. Robert Cotton Correctional Facility (JCF), where he is currently located. Corby DeForest, classification director at JCF, assigned Scott to a legal writer position at JCF. Scott claims that, a week later, Groves instructed DeForest to terminate Scott again. [*Id.,* PgID 152-53].  Scott forwarded Randall Haas,

3

the JCF warden, a grievance in which he again claimed that Groves' actions violated policy and were in retaliation for his threat to sue her. Assistant Warden Administrator Ken Ryan responded that Scott was terminated for unauthorized communication and for failing to follow the library staff's instructions. [*Id.*].

Scott claims that the MDOC Defendants' retaliated against him in violation of the First Amendment, denied him meaningful access to the courts, and deprived him of due process. [*Id.*, PgID 154-157]. He seeks damages and injunctive relief. [*Id.,* PgID 158]. For the reasons stated below, the Court recommends that Defendants' motions for summary judgment be granted.

### III.  ANALYSIS

Rule 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986). The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986);

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). A fact is material if it could affect the outcome of the case based on the governing substantive law. *Liberty Lobby*, 477 U.S. at 248. A dispute about a material fact is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). The opposing party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). Moreover, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position

5

will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby*, 477 U.S. at 252.

In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court need only consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

### A. First Amendment Retaliation and Meaningful Access to the Courts

To establish a First Amendment retaliation claim, the plaintiff must establish three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  Scott alleges that he was engaged in protected conducted when (1) he threatened to file a § 1983 suit against Groves if he were not returned to RRF, (2) he complained about the keyboards being too small, and (3) he contacted Matwrejezyk, the contract attorney.  [R. 19, PgID 154].  He claims that this protected conduct led him to be terminated from the legal writing program and denied him meaningful access to the courts.

The Second Circuit noted that "[r]etaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)).  That warning is apropos to this case given that Scott is seeking damages and injunctive relief for being terminated from the legal writing program, even though he repeatedly protested having to participate in the program.

Scott's threat to file a § 1983 suit against Groves unless he was not returned to RRF is especially frivolous and did not constitute protected conduct.  The First Amendment right to pursue legal claims against prison officials applies "only if the grievances are not frivolous."  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).  Scott's threat to sue Groves was frivolous because

"inmates do not have an inherent constitutional right to placement in a particular institution." *Moore v. McGinnis,* 182 F.3d 918, *2 (6th Cir. 1999) (unpublished) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). Furthermore, Michigan's prison officials have complete discretion with regard to the placement of prisoners. *Id.* (citing Mich. Comp. Laws § 791.264). Thus, Scott's threat to sue Groves cannot support a retaliation claim against any of the Defendants.

Scott argues that his complaint about the small keyboards is protected conduct because he had a right to assist other prisoners in accessing the courts. [R. 24, PgID. 221]. It is true that prison officials may not limit jailhouse lawyering that interferes with an inmate's ability to present his grievances, but only if that assistance is necessary to vindicate the inmate's access to the court. *Thaddeus-X,* 175 F.3d at 395. Here, Scott does not allege that his assistance was necessary in order for another inmate to access to the courts, so his claim fails.

Nor did Scott's contact with attorney Matwrejezyk constitute protected conduct that supports a retaliation claim. Defendants state that Scott contacted Matwrejezyk through a three-way telephone call, in violation of

8

procedures set forth in the MDOC Legal Writer Program Manual.[2] [R. 16-3, PgID 96]. Scott disputes that the Manual prohibits such phone contact, that he was ever told that such contact was prohibited, or that he directly contacted Matrwrejezyk by phone. [R. 24, PgID 205, 234-36]. He asserts that his sister called Matrwrejezyk on his behalf. [*Id.*, 234-36].

    Regardless, Scott had no constitutional right to attorney representation for his civil lawsuit. *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). Additionally, while a prison must provide inmates with meaningful access to the courts, it does not have to provide access to an attorney in order to fulfill that obligation and it may regulate prisoner-attorney contact. *Knop v. Johnson*, 977 F.2d 996, 999 (6th Cir. 1992) ("[A]ccess to the courts need not entail access to an attorney; access to an adequate law library, or to paralegal personnel with access to such a library, is sufficient."); *Johnson v. Cnty. of Wayne*, No. 08-CV-10209, 2008 WL 4279359, at *5 (E.D. Mich. Sept. 16, 2008) (prisons may regulate attorney contact). Further, when access to the court is curtailed, a constitutional violation occurs only if the inmate has suffered an actual harm. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Thus, Scott had no

---

[2] Defendant cites the portions of the Manual that describe the "Work Environment," "Review of Legal Writer Work," and "Oversight of the Program." [R. 16-3, PgID 102-05].

protected right to contact Matrwrejezyk or any other attorney by telephone either directly or through his sister; the Defendants' actions in prohibiting Scott from calling the attorney did not constitute protected conduct that could support a retaliation claim.

For the same reasons, Scott's companion claim that the Defendants' actions of prohibiting him from contacting Matrwrejezyk denied him meaningful access to the courts must fail.

### B. Fourteenth Amendment Due Process Violation

Scott argues that Defendants violated his procedural due process rights in the manner in which he was terminated from the legal writing program. In order to state a claim for a violation of procedural due process, a prisoner must first allege the existence of a protected liberty or property interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Citing *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454 (1989), Scott claims that MDOC policies created a liberty interest because they mandated the circumstances under which he could be disciplined. [R. 24, PgID. 226]. However, after *Thompson*, the Supreme Court clarified that the Due Process Clause protects only State created liberty interests that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The loss of prison employment does not impose the necessary atypical and significant hardship to create a constitutionally protected property interest. *Dobbins v. Craycraft*, 423 Fed. Appx. 550, 552 (6th Cir. 2011); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). To the contrary, Michigan law vests MDOC with complete discretion regarding prisoner work assignments. *Dobbins,* 423 Fed. Appx. at 552. Consequently, Scott's due process claim is without merit.

### C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. The Court agrees. Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a governmental official raises the defense of qualified immunity, a court must determine if the facts alleged by the plaintiff establish a violation of a constitutional right and, if so, determine whether the right was clearly established at the time of the violation. *Id.* at 232.

Scott has failed to establish that Defendants violated a constitutional right, much less a clearly established one. Defendants are therefore entitled to qualified immunity.

11

**D.** *Sua Sponte* **Dismissal of Booker**

The Court has an obligation under 28 U.S.C. §§ 1915(e)(2)(B) to dismiss complaints *sua sponte* when they fail to state a claim, are frivolous, or seek monetary relief from immune defendants. *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997). The claims against Booker arise out of his investigation of Scott's grievance regarding his removal from the legal writing program. [R. 19, PgID 152, 155-56]. For the same reasons that Scott has not stated a claim against the other MDOC Defendants, the claims against Booker should be dismissed *sua sponte* pursuant to Sections 1915(e)(2)(B) and 1915A.

### III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' motions for summary judgment [R. 16; R. 47] be **GRANTED**, and that the claims against Booker be **DISMISSED SUA SPONTE**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: June 11, 2015

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 11, 2015.

                                          s/Marlena Williams

                                          MARLENA WILLIAMS

                                          Case Manager